IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIANG DIANG DONG, | : | |
|     Petitioner | : | |
| | : | |
| v. | : | CIVIL NO. 02-CV-04565-JED |
| | : | |
| IMMIGRATION & NATURAL-<br>IZATION SERVICE, | : | |
|     Respondent | : | |
| | : | |

GOVERNMENT'S RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS

I. INTRODUCTION

The petitioner in this alien habeas case is a native and citizen of the People's Republic of China through birth there on November 26, 1973. Dong entered the United States surreptitiously by crossing the Mexican frontier with a smuggler near San Ysidro, California in about March 1995.

On June 24, 1999 Dong was convicted of Hobbs Act extortion (18 U.S.C. § 1951) in the Southern District of New York and sentenced to 30 months imprisonment. The judgment/commitment order is attached.

On April 21, 2000 an agent of the Immigration & Naturalization Service (INS) found Dong in the Federal Correctional Institution at Schuylkill. On April 21, 2000,

-1-

the INS issued a "Notice Of Intent To Issue Final Administrative Removal Order" (form I-861). This notice is authorized by the 1996 amendments to the Immigration & Nationality Act (INA), specifically 8 U.S.C. § 1228(b). Section 1228(b) provides for an "administrative" removal (*i.e.* without a hearing before an immigration judge) of any alien who is not a permanent resident and who has been convicted of an aggravated felony.[1] Because the charges were irrefutable, the INS issued a final order of removal on August 8, 2000.[2] That final order is attached as well.

---

[1] INA § 238(b)(8 U.S.C. § 1228(b)) provides for the expedited removal of (1) any alien, who (2) has not been lawfully admitted for permanent residence, or has conditional permanent resident status under section 216 of the INA, (3) has been convicted of an aggravated felony and such conviction has become final; and (4) is deportable under 8 U.S.C. § 1227(a)( 2)(A)(iii) (providing for deportation of "aggravated felons"). See 8 CFR § 238.1(b)(1). Aggravated felonies include "crimes of violence," 8 U.S.C. § 1101(a)(43)(F), and Dong's specific offense of conviction, "Interference with Commerce by Threats or Violence," appears to satisfy that definition.

[2] Dong made a *pro forma* claim to for a waiver of removal, on the basis that he feared being tortured if returned to China. Earlier he had told the agent who interviewed him that he had no fear of the Chinese government. Those claims are collateral to his administrative order of removal and not raised in the habeas petition.

Dong came into INS custody upon his release from FCI Schuylkill, sometime in the Fall of 2000. His custody was reviewed by INS Deportation Officers in the Spring of 2001. The reviewing officer, Mr. Shearon, noted that Dong has no job skills, training, job offers or meaningful ties save a "cousin" in New York. Moreover, Dong had proved something of a disciplinary problem while detained.

The INS made several requests for a "travel document" to the Chinese Government in the Fall of 2001 and the Spring of this year, but the agency has not yet secured a document to effect Dong's removal.

On October 19, 2001 the INS headquarters in Washington reviewed Dong's custody, and determined that his detention would be continued. Dong was invited to submit evidence to the INS headquarters that his removal could not be accomplished in the foreseeable future.

On July 9, 2002, Dong filed the instant petition, alleging that his continued detention is violative of the Constitution; Dong cites the Court's decision in <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), decided last Summer, in support of his case.

For the reasons that follow, the petition should

be dismissed.

II. ARGUMENT

         Under the immigration law in effect since April 1, 1997, once Dong's removal order became final, the Attorney General had a period of 90 days to remove him; see 8 U.S.C. § 1231(a). The 90-day term is referred to as the "removal period." The removal period starts at the latest of three points: the date the order becomes administratively final; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). In this case the period started when Dong was released from penal custody, in October 2000.

      During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2). If the INS cannot expel the alien in the 90 day "removal period," the Attorney General is obliged to either release the alien, or detain him subject to conditions under 8 U.S.C. § 1231(a)(6); Ho v. Greene, 204 F.3d 1045, 1059-60 (10th Cir. 2000).

      In Zadvydas v. Davis, *supra,* the Supreme Court addressed the issue of the temporal limits of detention of

an alien under a final order of removal. The <u>Zadvydas</u> petitioner had been admitted for permanent residence but had been ordered deported following criminal convictions. Because Zadvydas was actually "stateless" (he had been born in a displaced persons' camp in Europe just after the Second World War), no country would agree to take him. The Court held that Zadvydas' continued detention was not permissible absent some showing that he could be removed.

In so holding, the <u>Zadvydas</u> Court set up a framework to analyze "post-order" detention claims by aliens. The Court, relying on the erstwhile 8 U.S.C. § 1252(c)-(d)(1994)(repealed), prescribed a presumptive period of post-order detention of six months. After six months, if the alien can show the court "good reason to believe that there is no likelihood of removal in the reasonably foreseeable future," the Government must then rebut the alien's showing in order to continue detention. 121 S.Ct. at 2505. The Court was careful to note that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant

likelihood of removal in the reasonably foreseeable future." Id.

Zadvydas has no application to Dong. The Zadvydas Court was careful to distinguish between the due process rights of detained aliens who have "gained entry" and the rights of aliens like Dong who have not "gained entry;" the Court noted that the distinction "runs throughout immigration law," and observed that Fifth Amendment due process still has minimal or no application to aliens seeking admission or otherwise outside of the borders; Zadvydas, 121 S.Ct. at 2500-02, declining to overrule Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S. St. 625 (1953). The Zadvydas Court confirmed that "excludable/inadmissible" aliens seeking entry have no constitutional right to be at large in this country, and may be detained indefinitely. Zadvydas at 221 S.Ct. at 2500-02. Cf., Chi Thon Ngo v. Immigration and Naturalization Service, 192 F.3d 390, 394-395 (3rd Cir. 1999)(There is no constitutional impediment to indefinite detention of an alien with criminal record under final Order of exclusion, deportation or removal if (1) there is possibility of his eventual departure; (2) there are adequate and reasonable

provisions for grant of parole; and (3) detention is necessary to prevent risk of flight or threat to the community).

Dong entered the United States illegally in 1995 and was part of an extortion gang in June 1998, according to the Judgment and commitment order in his case. He reported no employment to the INS prior to his arrest, and there is no reason to think that Dong entered the United States for any legitimate or lawful reason. That he is both a flight risk and a danger is beyond peradventure. More to the point, Zadvydas does not apply to him, and until Dong establishes that there is no chance of his ultimate expulsion, his detention is lawful. Chi Thon Ngo, *supra,* at 400; Cf. Brown v. Cuyler, 669 F. 2d 155, 158 (3d Cir. 1982)(federal habeas corpus petitioner has the burden of proving all facts entitling him to a discharge from custody).[3]

---

[3] Dong is free to apply to the consular officials of his country for permission to return to China, and he may apply to any other country which might take him. Acceptance by any country would end his detention forthwith. There is, of course, nothing in the INS file to suggest that he has made any such application.

III. <u>CONCLUSION</u>

      For the foregoing reasons the petition should be dismissed.

                                  Respectfully,

                                  PATRICK L. MEEHAN
                                United States Attorney


_____ _____
                                JAMES G. SHEEHAN
                                Assistant United States Attorney
                                Chief, Civil Division


                                _____
                                STEPHEN J. BRITT
                                Assistant United States Attorney

## *Certificate of Service*

      I certify hereby that on the 16th Day of August, 2002, I personally served a copy of the attached Government's Response To Petition For Writ Of Habeas Corpus, addressed to:

        Jiang Diang DONG    A77 627 392
        Montgomery County Correctional Facility
        60 Eagleville Road
        Norristown, PA            19403-0001

by first class mail service upon petitioner.

        _____
        STEPHEN J. BRITT
        Assistant United States Attorney
        Suite 1250, 615 Chestnut Street
        Philadelphia, PA 19106-4476
        (215) 861-8443
        (215) 861-8642    telecopier